UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

DERRICK GRAY,

        Debtor.

                Case No. 11-10640
                Honorable Julian Abele Cook, Jr.

<u>ORDER</u>

On June 29, 2010, the debtor, Derrick Gray, filed a voluntary bankruptcy petition under Chapter 13 of the bankruptcy code. Wells Fargo Bank, N.A. ("Wells Fargo") - a secured creditor by virtue of holding and servicing a mortgage loan secured by Gray's real property - filed a proof of claim in which it itemized fees that it claimed Gray owed. This itemization included certain fees - denominated "Inspection Fees" and "Other Advance - Property Preservation" - the necessity and reasonableness of which the United States Trustee ("Trustee") questioned. The Trustee filed a motion in which he requested an order from the Bankruptcy Court for Wells Fargo to produce certain documents and appear for an examination pursuant to Bankruptcy Rule 2004. Wells Fargo opposed the motion. After a hearing, the Bankruptcy Judge granted the Trustee's request. Currently before the Court is Wells Fargo's motion for leave to appeal the Bankruptcy Court's order.

I.

Before the Trustee filed the Rule 2004 motion in the Bankruptcy Court, he sent a letter to Wells Fargo in which he requested clarification of the nature of $105 in fees denominated

"Other Advance - Property Preservation." Wells Fargo responded to this request by listing the dates on which property preservation services were performed and providing "all of the invoices, work orders, and inspection reports for each of the seven property inspections that made up the $105 charge." (Appellant's Mot. for Leave at 3). It appears that inspections performed before foreclosure were charged as "Inspection Fees," but inspections performed after foreclosure were charged as "Property Preservation" fees.

The Trustee questioned whether so many inspections were necessary and whether the associated fees were reasonable, and thus filed his Rule 2004 motion for document production and an examination. The Trustee sought to examine Wells Fargo on the following topics: (1) the total arrearage on Gray's account; (2) the reasonableness of the inspection fees imposed against Gray's account; (3) Wells Fargo's policies and procedures applicable to Gray's account in (a) ordering an inspection and (b) referring a proof of claim; and (4) documents and other information relied on in referring the proof of claim. In addition, the Trustee sought a subpoena *duces tecum* compelling Wells Fargo to produce the following documents: (1) all communication sent to Gray between May 1, 2009, and June 29, 2010; (2) all documents constituting Wells Fargo's records of Gray's account; (3) all aspects of any agreements between Wells Fargo and a default servicer associated with the Gray case; (4) Wells Fargo's policies and procedures applicable to the Gray case concerning (a) the ordering of and accounting for inspections and property preservation fees; (b) filing proofs of claims on its accounts; and (5) all documents that Wells Fargo relied upon in referring the Gray account for a proof of claim.

At a hearing on the Rule 2004 motion, the Trustee acknowledged that the motivation behind his letter to Wells Fargo - to wit, his concern that Wells Fargo was "double dipping" by

charging twice, once under each denominated category of fees, for home inspections - was alleviated by Wells Fargo's responsive letter. (1/19/11 Hr'g Tr. at 4:14-21, attached as Ex. B to Appellant's Mot. for Leave). However, the Trustee stated that he continued to be concerned about the reasonableness of those fees as well as the necessity of performing so many home inspections. (Trustee's Resp. at 2). Wells Fargo objected to the examination, arguing that the "double dipping" theory lacked legal or factual basis and therefore the Trustee had not demonstrated the "good cause" required to support a request for Rule 2004 examination. Moreover, Wells Fargo maintained that the documents and topics encompassed by the request exceeded the permissible scope of a Rule 2004 examination.

In response, the Trustee argued that - even leaving aside the "double dipping" issue - there was still good cause for the examination because: (1) Wells Fargo's labeling of inspections differently depending on whether they were done before or after foreclosure lacked transparency and made it difficult for parties to determine if fees were reasonable; (2) a pre-foreclosure inspection was performed in early December and a post-foreclosure inspection was performed in late December, which appears, on its face, to be unreasonable; and (3) the existence of separate tracking systems pre- and post-foreclosure may - as here - result in unnecessary inspections and raise the specter of Well Fargo attempting to collect unreasonable fees through the bankruptcy process. (1/19/11 Hr'g Tr. at 4:14-5:23).

During the hearing, the Bankruptcy Judge inquired whether the fact that Wells Fargo filed a proof of claim might not be sufficient, by itself, to constitute good cause for a Rule 2004 examination. Separately, the Bankruptcy Judge referred to academic studies that demonstrated that approximately half of mortgage claims contain errors, and suggested that that fact, by itself,

might be sufficient to constitute not only good cause - but an obligation - for the Trustee to investigate the reasonableness of the fees reflected in the claim.

On February 10, 2011, the Bankruptcy Court entered an order in which it granted the Trustee's request for a Rule 2004 examination and the issuance of a subpoena *duces tecum*. Wells Fargo presents three questions on appeal; to wit, whether the Bankruptcy Court (1) erred as a matter of law by permitting the Trustee to proceed with a Rule 2004 examination that exceeds the permissible scope of a Rule 2004 exam; (2) erred as a matter of law by not requiring the Trustee to demonstrate good cause for the requested examination; and (3) abused its discretion in finding that the Trustee had met his burden of demonstrating good cause.

Wells Fargo timely filed a notice of appeal of, and motion for leave to appeal, the Rule 2004 order, and has separately filed the following motions related to its appeal: (1) emergency motion to stay the Rule 2004 order pending this appeal; (2) motion to expedite the motion to stay; and (3) motion for leave to file a reply brief in further support of its motion to appeal. In a prior order, the Court granted the last-listed motion.

Wells Fargo argues that its appeal to this Court is proper on three separate bases: (1) the Rule 2004 order is a final decision as to which Wells Fargo has an appeal of right and over which the District Court properly has jurisdiction, 28 U.S.C. § 158(a)(1); (2) the challenged order is appealable as of right under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949); and (3) even if the challenged order is interlocutory, the Court should grant leave to appeal under 28 U.S.C. § 158(a)(3). The Court will consider each argument seriatim.

II.

A federal district court has jurisdiction to hear appeals - and an aggrieved litigant may appeal as of right - from "final judgments, orders, and decrees" of a bankruptcy court. 158 U.S.C. § (a)(1). In the Sixth Circuit, "finality 'is considered in a more pragmatic and less technical way in bankruptcy cases than in other situations.'" *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) (quoting *Lindsey v. O'Brien, Tanksi, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning)*, 86 F.3d 482, 541-42 (6th Cir. 1996)); *see also Millers Cove Energy Co. v. Moore (In re Millers Cove Energy Co.)*, 128 F.3d 449, 451 (6th Cir. 1997) (citation and internal quotation marks omitted) ("[T]he concept of finality applied to appeals in bankruptcy is broader and more flexible than the concept applied in ordinary civil litigation."). This is so because "[b]ankruptcy cases frequently involve protracted proceedings with many parties participating. . . . [Therefore] courts have permitted appellate review of orders that in other contexts might be considered interlocutory." *Dow Corning*, 86 F.3d at 488 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986)).

The test for finality in the bankruptcy context has often been stated as requiring a showing that the challenged order "finally dispose[s] of discrete disputes within the larger case." *E.g.*, *id.* (quoting *In re Saco Local Dev. Corp.*, 711 F.3d 441, 444 (1st Cir. 1983)); *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co. Inc.)*, 127 B.R. 267, 271 (D. Colo. 1991) (quoting *Adelman v. Fourth Nat'l Bank & Trust Co., N.A. (In re Durability, Inc.)*, 893 F.2d 264, 265 (10th Cir. 1990)) ("The concept of finality . . . . applies 'not in the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition.'"). This test has also been said to require a showing that the order "ends the litigation on the merits and leaves nothing for the court to do

but execute the judgment." *E.g.*, *In re Barrett*, 337 B.R. 896 (6th Cir. B.A.P. 2006), *aff'd*, 487 F.3d 353 (6th Cir. 2007); *In re Smelser*, 327 B.R. 815, 817 (E.D. Mich. 2005).

Analyzing nearly identical language in 28 U.S.C. § 158(d) regarding the jurisdiction of the courts of appeal, the Seventh Circuit has drawn a distinction between "discrete disputes" and "discrete issues," with only the former being subject to immediate appeal. *In re Comdisco, Inc.*, 538 F.3d 647, 651-52 (7th Cir. 2008). A discrete dispute is one that is essentially separable from the larger case, and "disposition of a claim that would be final as a stand-alone suit outside of bankruptcy is also final under § 158(d) in bankruptcy." *Id.* at 651 (quoting *In re Morse Elec. Co.*, 805 F.2d 262, 265 (7th Cir. 1986)). On the other hand, "a decision or order that resolves only an issue that arises during the administration of a bankruptcy estate is too small a litigation unit to justify treatment as a final judgment." *Id.*; *see also Zedan v. Habash*, 529 F.3d 398, 402 (7th Cir. 2008) ("[T]he test we have utilized to determine finality under § 158(d) is whether an order resolves a discrete dispute that, but for the continuing bankruptcy, would have been a stand-alone suit by or against the trustee.").

Wells Fargo and the Trustee have each provided the Court with a list of cases that purportedly support their respective positions with respect to the finality of a Rule 2004 order. After examination of these - and many more - opinions, the Court concludes that those opinions that determine that a Rule 2004 order is not a final judgment are significantly more persuasive.

Most of the cases cited by Wells Fargo are distinctly unpersuasive. Several engage in no analysis of the jurisdictional issue whatsoever, and there is no evidence that the courts even considered the possibility that jurisdiction might not be proper. *See First Nat'l Bank v. Scaccia*, no. 88-3369, 1988 WL 123332 (E.D. La. Nov. 10, 1988) (accepting review of Rule 2004 order

without any jurisdictional analysis); *Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 42 B.R. 362 (S.D.N.Y. 1984) (same). Others simply accept that a Rule 2004 order is a final order without any consideration of the relevant tests. *See In re Palmquist*, No. C94-1475C, 1995 U.S. Dist. LEXIS 9464 (W.D. Wash. June 15, 1995) (citing *Blinder, Robinson* for the proposition that an "order permitting the taking of the Rule 2004 examination is a final judgment," and engaging in no further jurisdictional analysis, despite the fact that this is not an accurate description of *Blinder, Robinson*'s holding); *Euro.-Am. Bank & Trust Co. v. GATX Aircraft Corp. (In re Hawley Coal Mining Corp.)*, 47 B.R. 392, 393 (S.D.W. Va. 1984) (referring, without analysis, to a Rule 2004 order as a final order); *see also Blinder, Robinson*, 127 B.R. at 272 (noting that *Hawley Coal*, *Scaccia*, and *Johns-Manville* all failed to engage the jurisdictional question).

Of the cases cited by Wells Fargo, only *Buckner v. Oklahoma Tax Commission (In re Buckner)*, No. 00-073, 2001 WL 992063, at *2 (10th Cir. B.A.P. Aug. 30, 2001),[1] engaged in any jurisdictional analysis. There, the bankruptcy panel held that, where a Rule 2004 motion was filed nearly two years after confirmation of the bankruptcy plan, "the postconfirmation Rule 2004 examination [was] a separate proceeding and there [was] no indication that further action by the bankruptcy court [would] be forthcoming." The panel concluded that the Rule 2004 order was "final for the purposes of appeal under § 158(d)."

On the other hand, the cases cited by the Trustee recognize and - in varying depths - analyze the jurisdictional question. *Vance v. Lester (In re Vance)*, No. 98-1470, 1998 WL

---

[1]*Buckner* notes that the order "has no precedential value and may not be cited, except for the purposes of establishing the doctrines of law of the case, res judicata, or collateral estoppel." 2001 WL 992063, at n.*.

783728, at *1 (7th Cir. Nov. 2, 1998) ("Although neither the district court nor the parties address the issue, we first consider whether we have jurisdiction to review the bankruptcy court's order granting a Rule 2004 examination. A majority of courts that have considered the issue have held that orders granting or denying Rule 2004 examinations are, like discovery orders, interlocutory."); *In re Kaiser Grp. Int'l, Inc.*, 400 B.R. 140, 144 (D. Del. 2009) ("The Debtors also contend that orders denying discovery pursuant to Bankruptcy Rule 2004 are inherently final. However, the majority of courts have reached a contrary conclusion."); *In re Midwest Video Games, Inc.*, No. 98 C 3836, 1998 WL 395152, at *1 (N.D. Ill. July 9, 1998) ("The court declines to accept the appellants' invitation to find that the bankruptcy judge's [Rule 2004] discovery order is final because the bankruptcy judge has indicated that he does not intend to revisit his ruling, as the order is clearly interlocutory, even under the more relaxed standards of finality applicable to bankruptcy cases."); *Gache v. Balaber-Strauss*, 198 B.R. 662 (S.D.N.Y. 1996) (order granting Rule 2004 examination was not final because, among other reasons, a motion to compel debtor's presence at the exam was still pending before the bankruptcy court); *Towers Fin.*, 164 B.R. 719 (denial of Rule 2004 order was not final, and even if *Blinder, Robinson* created exception to general rule that bankruptcy discovery orders are not appealable, it would not be applicable there because the possibility existed that the bankruptcy court would take further action); *Aetna Cas. & Sur. Co. v. Glinka*, 154 B.R. 862, 865 (D. Vt. 1993)("[T]his Court concludes that the [Rule 2004] Examination Order . . . was an interlocutory order. It served as an initial authorization to pursue broad discovery under

Bankruptcy Rule 2004.").[2]

Wells Fargo and the Trustee each claim that *Blinder, Robinson* supports their respective position. There, the court considered the finality of two bankruptcy court orders, one granting the trustee's motion for Rule 2004 examinations of various persons and entities that had done business with the debtor, and one granting a motion to close certain of those examinations to other parties on the basis of attorney-client privilege. The court noted that, at that time, there were few cases involving appeals of Rule 2004 orders, and even among those few, the results were inconsistent. 127 B.R. at 272. The court determined that the finality of Rule 2004 orders should be determined not by hard-and-fast rule, but rather on a case-by-case basis. *Id.* at 272-73. "Where the dispute has been narrowed and there is no indication that further action by the bankruptcy court will be forthcoming, an order concerning Rule 2004 examinations should properly be considered final." *Id.* at 273. Applying this test, the court determined that the order granting the Rule 2004 motion was not final because the bankruptcy court had subsequently ruled on a motion related to the scope of the Rule 2004 exam. *Id.* ("[T]he [Rule 2004] order simply gave the Trustee initial authorization to commence Rule 2004 examinations . . . . It did

---

[2]Wells Fargo asserts that cases such as *Vance* and *Midwest Video* are distinguishable because they involved orders for Rule 2004 exams of *debtors*, who will have later opportunity to appeal because they will remain in the litigation. However, Well Fargo's argument is significantly undermined by the fact that many other cases - cases that Wells Fargo does not acknowledge - involve Rule 2004 exams of creditors or other third parties. Wells Fargo also suggests that the Court should discount *Vance* and *Midwest Video* because the courts had merely "summarily concluded" that Rule 2004 orders to be non-final. In light of the discussion above regarding Wells Fargo's case citations, this argument is not well taken. Moreover, this argument is misleading in at least two respects: (1) Wells Fargo ignores the fact that *Midwest Video* did engage in a substantive analysis and critique of *Blinder, Robinson* in light of the rationale for the finality requirement; and (2) Wells Fargo fails to acknowledge the many other cases that came to the same result after engaging in extensive analysis.

not finally resolve on the merits [appellant's] dispute regarding the permissible scope to the Rule 2004 examinations."). Conversely, the court determined that the order closing certain of the examinations to other parties was a final order. *Id.* at 277 ("[T]his appeal involves the discrete issue of the Trustee's entitlement to closed Rule 2004 examinations, and the bankruptcy court's order appears to have fully resolved the parties' dispute.").

As a general matter, discovery orders are interlocutory and not immediately appealable. *E.g.*, *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 471 (6th Cir. 2006) ("Discovery orders generally are not final decisions and cannot be reviewed unless the trial court enters a final judgment disposing of all claims."); *Kaiser Grp. Int'l*, 400 B.R. at 143 ("Generally, pretrial discovery decisions are not considered to be final decisions subject to immediate appeal, even under ["bankruptcy's"] flexible approach to finality."); *Hoffenberg v. Cohen (In re Towers Fin. Corp.)*, 164 B.R. 719, 720 (S.D.N.Y. 1994) ("Bankruptcy court orders granting or denying discovery do not finally dispose of an entire claim on which relief may be granted, and therefore are generally treated as interlocutory and not appealable as of right."). Moreover, the "majority of courts that have considered the issue have held that orders granting or denying Rule 2004 examinations are, like discovery orders, interlocutory." *Vance*, 1998 WL 783728, at *1 (listing cases).

Instead of immediate appellate review, "[g]enerally, a party challenging a discovery order has two options: to comply with the order and challenge it at the conclusion of the case; or to refuse to comply with the order and contest its validity if subsequently found in contempt for such refusal." *Countrywide Home Loans, Inc. v. Office of the U.S. Trustee*, No. 08-617, 2008 WL 2388285 (W.D. Pa. June 11, 2008); *see also Aetna Cas. & Sur. Co. v. Glinka*, 154 B.R.

10

862, 867 (D. Vt. 1993) ("To obtain appellate review of an order compelling production or testimony in the rare case when an appeal after final judgment would not cure an erroneous ruling, a witness must refuse to obey the subpoena and suffer an order imposing a contempt penalty."). The Sixth Circuit has recognized the continuing vitality of this rule. *Pogue*, 444 F.2 at 471 ("The rule laid out in [*Alexander v. United States*, 201 U.S. 117, 121-22 (1906)] - that an individual seeking to appeal a discovery order must first disobey the order and suffer a contempt citation - remains the general rule today."). Wells Fargo argues that "[s]urely, the [Trustee] does not seriously suggest that a national mortgage service must incur the stigma and negative publicity of a contempt finding by a Bankruptcy Court just to obtain appellate review of a Rule 2004 order." (Reply at 3). However, Wells Fargo fails to explain why a national mortgage service should receive different treatment than any other entity or individual.

In support of its claim that the Rule 2004 order is a final judgment, Wells Fargo argues that the Rule 2004 examination is the only present dispute between Wells Fargo and the Trustee, and the Bankruptcy Court definitively resolved that dispute by ordering the examination. Thus, according to Wells Fargo, there is nothing left for the Bankruptcy Court but to execute the order. However, several courts have rejected exactly this argument, reasoning that the Rule 2004 examination is a potential beginning - not a definitive end - of a dispute. *E.g. Countrywide Home Loans*, 2008 WL 2388285, at *4 (finding that a Rule 2004 order is not final because, among other reasons, "additional questions may arise as the U.S. Trustee conducts the examinations such as the permissible scope of the examinations and the consequences of any refusal by [the party to be examined] to comply with the examination."). Rule 2004 examinations "allow the court to gain a clear picture of the condition and whereabouts of the

bankrupt's estate." *Johns-Manville*, 42 B.R. at 364. Necessarily, the permissible scope encompasses "[t]he examination of witnesses having knowledge of the debtor's acts, conduct, *liabilities*, assets, etc. . . . and the inquiry may 'cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him.'" *Id.* (emphasis added) (citation omitted) (quoting *In re Mantolesky*, 14 B.R. 973, 976 (Bankr. D. Mass. 1981)). Courts have frequently stated that Rule 2004 authorizes parties to engage in "fishing expedition[s]." *E.g. Blinder, Robinson*, 127 B.R. at 274. The Court cannot predict what, if any, issues may arise as a result of the examinations, nor can it predict whether Wells Fargo will comply with the Rule 2004 order. The fact that issues might arise that require further action from the Bankruptcy Court is sufficient to establish that the Rule 2004 order did not finally dispose of the discrete dispute between Wells Fargo and the Trustee. *See, e.g.*, *In re Dental Profile, Inc.*, No. 09 C 6160, 2010 WL 431590, at *2 (N.D. Ill. Feb. 1, 2010) ("[T]he order granting leave to conduct a Rule 2004 examination in no way 'resolves a discrete dispute' but is only a discovery order for information that will allow both sides to present evidence in the dispute."); *Glinka*, (because district court could not predict whether party ordered to submit to Rule 2004 examination would comply with order, and, if not, whether bankruptcy court would issue contempt order, "require[d] a finding that the [challenged] order was indeed interlocutory"). The Court thus determines that the Rule 2004 is not a final order.

III.

Wells Fargo next argues that it has an appeal as of right pursuant to the collateral order doctrine articulated by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949) (immediate appellate review available for that "small class [of decisions]

which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."). Under this doctrine, an interloctutory order may nevertheless be immediately appealable if it "(1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from final judgment." *Dow Corning*, 86 F.3d at 488 (citing *Cohen*). As with the rule of finality discussed above, these factors are also applied flexibly in the bankruptcy context. *Id.* ("These three factors are equally fluid and are applied flexibly in determining whether an order involving a bankruptcy proceeding is reviewable."). However, "if there is doubt whether an order is collateral, the matter should be resolved in favor of finding a nonappealable controversy." *In re M.T.G., Inc.*, 298 B.R. 310, 314 n.8 (E.D. Mich. 2003).

The Sixth Circuit has "repeatedly held . . . that discovery orders are generally not appealable under the collateral order doctrine." *Pogue*, 444 F.3d at 472. Instead, "to obtain review from this court, a complaining party must disobey the discovery order and incur an appealable contempt citation if that party is able to do so." *Id.*; *see also, e.g.*, *Bowen v. Zach*, Nos. 96-4156, 96-4226, 1996 WL 668558, at *1 (citations omitted) ("The typical discovery order does not fall within the 'small class' of orders contemplated by *Cohen*. Discovery orders need not evade review, and they do not necessarily present the final word on the issue. A party may obtain review of a discovery order by violating the order and incurring sanctions or a finding of contempt. That order is then appealable.").

Wells Fargo's argument founders on the first prong of the *Cohen* test because, as

13

discussed above, the Rule 2004 order does not finally or conclusively determine a claim of right. Nor is the Rule 2004 order "effectively unreviewable." Again, as discussed above, if Wells Fargo were to refuse to comply with the order, and the Bankruptcy Court adjudged it in contempt, it could seek review of the contempt order. The conclusion that review of a Rule 2004 order cannot be had pursuant to the collateral order doctrine is in accord with other courts that have considered this precise question. *See, e.g.*, *In re Del Castillo*, No. 08-20020 (S.D. Fla. Feb. 8, 2008) (collateral order doctrine inapplicable to Rule 2004 order because it was unclear whether the bankruptcy court would take further action - for example, by issuing a contempt order - and the appellant had not demonstrated that it could not seek later review); *Glinka*, 154 B.R. 868 n.8 ("Application of the collateral order doctrine requires a finding that the order [denying motion to quash and directing production of documents for Rule 2004 examination] is effectively unreviewable. The issues raised in this appeal are reviewable in an appeal from a contempt sanction, should one be entered in this case."). The Court thus concludes that the collateral order doctrine is inapplicable here.

## IV.

Finally, Wells Fargo argues that the Court should exercise its discretion to grant leave to appeal under 28 U.S.C. § 158(a)(3) ("The district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and decrees [of bankruptcy courts.]"). Section 158 does not establish any standards to guide the district courts' discretion, but, "[i]n the absence of such guidance within the Bankruptcy Rules, appellate courts reviewing the decisions of bankruptcy courts have applied the standards found in 28 U.S.C. § 1292(b)." *In re Wicheff*, 215 B.R. 839, 844 (6th Cir. B.A.P. 1998). "Under §

1292(b), an appellant seeking review of an interlocutory order must show: (1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the [bankruptcy] court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation." *Id.* (citation omitted). Moreover, because interlocutory appeals "contravene the judicial policy opposing piecemeal litigation and the disadvantages of delay and disruption associated with it," *In re Am. Freight Sys., Inc.*, 194 B.R. 659, 661 (D. Kan. 1996), "[r]eview under § 1292(b) should be sparingly granted and then only in exceptional cases," *Wicheff*, 215 B.R. at 844; *see also In re A.P. Liquidating Co.*, 350 B.R. 752, 755 (E.D. Mich. 2006) (citation and internal quotation marks omitted) ("The discretion of the district court should be used sparingly, since interlocutory bankruptcy appeals should be the exception, rather than the rule.").

Wells Fargo submits that its appeal presents three controlling questions of law; to wit, (1) whether a bankruptcy court can order a Rule 2004 examination concerning a creditor's general policies and procedures that are not tethered to a debtor's estate; (2) whether a bankruptcy court can order a Rule 2004 examination without requiring that the requesting party demonstrate good cause for the examination, and (3) whether the Bankruptcy Court abused its discretion by ordering a Rule 2004 examination when the Trustee had not affirmatively demonstrated good cause for the examination. The Trustee disputes Wells Fargo's characterization of the Bankruptcy Court's actions, arguing that the challenged order does not purport to order discovery without requiring a showing of good cause.

The Court concludes that these questions do not present, as required, "pure" or "abstract" issues of law "suitable for determination by an appellate court without a trial record."

15

*Ahrenholz v. Bd. of Trs. Of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000); *see also In re Am. Specialty Cars, Inc.*, 386 B.R. 187, 196 (E.D. Mich. 2008) (citations and internal quotation marks omitted) ("A legal question of the type envisioned in § 1292(b) . . . generally does not include matters within the discretion of the trial court. Interlocutory appeals are intended for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts."); *In re Brentwood Country Club, LLC*, 329 B.R. 239, 242-43 (E.D. Mich. 2005) ("With reference to 28 U.S.C. § 1292(b) the term 'question of law' refers to a 'pure' question of law and not just an issue that is free from factual disputes."). To answer the questions that Wells Fargo has posed, the Court would have to first determine whether the Bankruptcy Court did the things alleged before it would proceed to determining whether it erred or abused its discretion in doing so. *See Brentwood*, 329 B.R. at 243 (refusing to review an interlocutory order where the appellant "ask[ed] this [c]ourt to review the oral arguments, the parties' pleadings and the record to determine if the bankruptcy court exceeded its authority"). This is not the type of pure legal issue that counsels for interlocutory review.

Nor does the Court believe that granting Wells Fargo leave to appeal would materially advance the ultimate termination of the litigation. On the contrary, and in light of the role of Rule 2004 examinations in pre-litigation discovery, the current appeal, if permitted, would prolong rather than hasten the termination of the litigation. *See Del Castillo*, No. 08-20020, at *11 (finding no controlling question of law that would advance litigation because the challenged Rule 2004 order did not finally adjudicate the validity of the creditor-appellant's claim, but rather simply allowed the trustee to conduct discovery regarding the creditor's factual

support for the claim); *In re Hecker*, No. 10-1904, 2010 WL 1875553 (D. Minn. May 10, 2010) ("The [c]ourt declines to exercise its discretion to decide this case with a limited record and the possibility of ongoing proceedings, such as contempt proceedings, which could resolve or narrow the issues raised on appeal."). The Court thus declines to exercise its discretion to grant Wells Fargo leave to appeal the Rule 2004 order.

V.

For the reasons that have been set forth above, the Court (1) denies Wells Fargo's motion for leave to appeal; and (2) denies Wells Fargo's motions to stay pending appeal and to expedite consideration of same as moot.

IT IS SO ORDERED.

Dated: March 15, 2011         s/Julian Abele Cook, Jr.
    Detroit, Michigan        JULIAN ABELE COOK, JR.
                                        United States District Court Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 15, 2011.

                                                                               s/ Kay Doaks
                                                                               Case Manager